**IT IS ORDERED as set forth below:**

**Date: August 6, 2026**



_____

**Lisa Ritchey Craig**
**U.S. Bankruptcy Court Judge**

_____

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 7 |
| | ) | |
| GLORIA JENNIFER EZECHUKWU, | ) | CASE NO. 23-62306- LRC |
| aka Gloria Ezechukwu | ) | |
| aka Gloria J Ezechukwu, | ) | |
| | ) | |
| Debtor. | ) | |
| | ) | |
| PRINCE MATHIAS, | ) | |
| | ) | |
| Movant, | ) | CONTESTED MATTER |
| | ) | |
| v. | ) | |
| | ) | |
| NEIL C. GORDON, Chapter 7 Trustee, | ) | |
| | ) | |
| Respondent. | ) | |

## ORDER

Before the Court is the *Motion for Return of Personal Property or Compensation for Unauthorized Removal* (Doc. 87, the "Motion"), filed by Prince Mathias ("Movant").   The Motion is opposed by Neil C. Gordon in his capacity as the Chapter 7 trustee (the "Trustee") of the bankruptcy estate of Gloria Ezechukwu ("Debtor").   *See* Docs. 89, 92, & 129 (the "Response").   This dispute constitutes a core proceeding, over which this Court has subject matter jurisdiction.   *See* 28 U.S.C. § 157(b)(2)(A); § 1334; *see also In re Christensen*, 598 B.R. 658, 663 (Bankr. D. Utah 2019).

## Procedural History

Debtor filed a voluntary petition under Chapter 7 of the Bankruptcy Code[1] (the "Code") on December 12, 2023.   The Trustee was appointed as Chapter 7 trustee.   On January 17, 2024, the Trustee filed a report of assets and requested a claims bar date be set.   (Doc. 11).   On April 15, 2024, the Trustee filed a Motion for an Order (A) Compelling Debtor to (I) Perform Her Statutory Duties and (II) Turn Over Property of the Estate and (B) Prohibiting Debtor from Removing Fixtures or Property of the Estate.   (Doc. 26, the "Motion to Compel").   In the Motion to Compel, the Trustee requested entry of an order directing Debtor to

---

[1] Title 11 of the United States Code.

vacate the Property or certain alternative relief that would enable the Trustee to sell the Property.  Debtor and the Trustee entered a consent order on the Motion to Compel (Doc. 34, the "First Consent Order") that essentially granted the alternative relief.  In the First Consent Order, Debtor agreed: to fully cooperate with the Trustee in all respects; immediately allow a real estate broker (the "Broker") to place a "For Sale" sign in the front yard of the Property and promptly provide Broker with a front-door key for the lockbox on the front door; maintain all utilities of the Property; maintain the Property in a clean and proper condition for showings; fully cooperate with Broker and other licensed agents showing the Property; and, before the closing of any sale of the Property, leave the Property in a clean, broom-swept condition, with all fixtures and appurtenances remaining with and attached to the Property.  All of this was without prejudice to the Trustee's right to seek further relief, including having Debtor removed from the Property by the U.S. Marshals Service ("USMS").

On July 10, 2024, the Trustee filed his Notice of Default, Request for Show-Cause Hearing, and Renewed Motion for Turnover of the Property.  (Doc. 40, the "Show Cause Motion").  In the Show Cause Motion, the Trustee alleged that Debtor had failed to comply with the First Consent Order by being "very resistant" to all showings of the Property.  Specifically, Debtor followed the agent and potential buyers from room to room telling them that her lawyer said there is no

chance that the Property will be sold and told multiple agents "I have no intention of selling this house."   The Court held a show cause hearing on August 1, 2024, at which time credible testimony was given regarding Debtor's conduct, and the Court directed the Trustee and Debtor's counsel to work towards a second consent order, which was entered on August 26, 2024.  (Doc. 45, the "Second Consent Order").   In the Second Consent Order, Debtor agreed: not to communicate with any prospective purchasers; to leave the key to the Property in the lockbox; and that, if given 2.5 hours of notice before a showing of the Property, neither Debtor nor any family member or friend would be in the Property.   Again, the relief granted in the Second Consent Order was without prejudice to the Trustee's right to seek further relief, including having Debtor removed from the Property by the USMS.

On October 17, 2024, the Trustee filed his Motion for an Order Authorizing (I) the Sale of Property of the Bankruptcy Estate Free and Clear of All Liens, Interests, and Encumbrances and (II) Disbursement of Certain Proceeds at Closing.  (Doc. 48, the "Motion to Sell").   The Motion to Sell sought Court approval to sell the Property to Devarious and Shanice Butler (the "Buyers"), to pay the valid liens on the Property, and to pay a portion of the expected surplus to Debtor.   The contract attached to the Motion to Sell indicated the sale would close on November 15, 2024, or within ten days of the date upon which the Court

approved the sale.    The Trustee also filed an Emergency Motion for Apprehension and Removal of Debtor from the Property (Doc. 51, the "Emergency Motion"), in which he alleged that, when updating his title search of the Property, he discovered that Debtor had attempted a postpetition transfer of an interest in the Property *via* quitclaim deed to Movant and that she had told the Broker that she would refuse to vacate the Property.   Worried that Debtor would try to interfere with the closing of the sale, the Trustee sought an order that would authorize the USMS to apprehend and remove Debtor and all other occupants from the Property, if necessary.

The Court held a hearing on the Motion to Sell and the Emergency Motion on November 14, 2024.   Debtor did not file a written response but appeared at the hearing *pro se*, her counsel having moved to withdraw from the case with Debtor's consent on October 31, 2024.   Movant did not appear at the hearing. The Court heard argument regarding the matters.   Debtor did not raise any substantive objections to the sale itself or put forth any alternative solution that would allow for payment of creditors without the sale of the Property. Accordingly, given that the case was nearly a year old and Debtor had known about the possibility of a sale of the Property for several months, the Court was constrained to overrule Debtor's objection and approve the sale and did so by

order entered on November 14, 2024.   (Doc. 57, the "Sale Order").[2]   The Court waived the automatic fourteen-day stay provided by Rule 6004(h) due to the representation of the Broker that a further delay could result in the loss of the sale to the Buyers and made a finding that the sale was made in good faith within the meaning of § 363(m).   The Court also granted the Emergency Motion (Doc. 58), ordering, in part, that "the USMS is authorized and directed to expeditiously remove Debtor and all other occupants from the Property, and to deliver full and quiet possession of the Property to Trustee instanter, at which time, Trustee will (a) retain the service of a locksmith to change and padlock all locks on the premises and secure the Property and (b) affix public notice that the Property is under the jurisdiction of the Federal Bankruptcy Court, pursuant to 11 U.S.C. § 541."   According to the Trustee's Interim Report, on December 4, 2024, the Trustee closed the sale of the Property.   Doc. 74.

On April 8, 2025, Movant filed the Motion, in which he alleges that: (1) Movant is the adult son of Debtor; (2) Movant owned personal property that was stored at the Property in a room separate from Debtor's property, such that there was no reason for the Trustee to conclude that the personal property was property of Debtor's bankruptcy estate; (3) the Trustee sold the Property on December 4,

---

[2]  On November 20, 2024, Debtor filed a Notice of Appeal of the Sale Order (Doc. 62).   The appeal was dismissed as statutorily moot on March 20, 2026 (Doc.122).

2024; (4) on November 19, 2024, the USMS executed a removal order for Debtor and other occupants of the Property, but the removal order did not authorize the removal of personal property; (5) no notice was provided to Movant that the personal property would be removed from the Property; (6) despite multiple requests for information regarding the location of the personal property, the Trustee and his agents did not respond; and (7) on December 2, 2024, a moving company arranged to collect Debtor's belongings from the Property, at which time they found the Property in disarray with personal property, including Movant's personal property, scattered about the Property, with some items "visibly discarded or missing."  Movant submits that the Trustee had no legal right to exercise control over Movant's personal property; that the Trustee's conduct violated Movant's rights under the Fifth Amendment to the U.S. Constitution and O.C.G.A. § 44-7-55; and that the Court has the authority under § 105(a) to either order the return of Movant's personal property or award compensation to Movant for its value.

In Response, the Trustee asserts that, in order for the final walk-through to occur, the closing of the sale of the Property to take place, and for Trustee to be able to deliver the premises to the Buyers, all personal property had to be removed from the Property and delivered to a storage unit.[3]   The Trustee also argues that:

---

[3]   In his Objection to Trustees [sic] Response (Doc. 95), Movant asks the Court to strike the Response as untimely

(1) the Trustee was expressly instructed by the USMS that Debtor was not permitted back on the premises of the Property for any reason (as the USMS could not come back out to the Property a second time); (2) the USMS further informed the local police of the situation, specifically, that Debtor was not to be allowed back on the premises of the Property, and that Debtor should be treated as a trespasser if she attempted to do so; (3) Debtor was provided information regarding the location of the personal property on December 4, 2024, and that Debtor eventually retrieved the personal property from the storage unit; (4) Movant knew or should have known well in advance of the Trustee's intention to market and sell the Property, and the necessity of removing all personal property from the premises of the Property; (5) Movant knew or should have known that the Trustee intended to have the USMS assist the Trustee in removing Debtor and any occupant from the Property; (6) the Trustee's request for the assistance of the USMS was due in large part to Debtor's attempted illegal transfer of the Property to Movant, such that Movant does not come to the Court with clean hands and, thus, cannot obtain equitable relief from this Court; and (7) that, if Movant was in fact storing personal property in the Property, he could have lawfully obtained his

---

and the overrule the Response because the Trustee failed to support it with evidence. The Court, in the exercise of its discretion and in the interest of resolving these issues on their merits, denies the request to strike the Response as untimely. Further, the Court finds that the facts necessary to the Court's determination of immunity are not in dispute and can be determined by reference to the record and Movant's allegations, such that the Trustee's failure to submit evidence is not a bar to the Court's decision herein.

personal property and could have contacted the Trustee or filed an appropriate motion with the Court at any time over the one year prior to the sale of the Property to request access to his personal property.  Finally, the Trustee raises absolute and qualified immunity as complete defenses to the Motion.  Accordingly, the Trustee submits that Movant is not entitled to compensation or any other relief sought by the Motion.

### Conclusions of Law

The filing of a bankruptcy petition creates a bankruptcy estate that consists of all property of the debtor.  11 U.S.C. § 541(a).  The Chapter 7 trustee is the representative of the bankruptcy estate.  11 U.S.C. § 323.  Section 704(a) of the Bankruptcy Code sets forth the general duties of Chapter 7 trustees and provides, in relevant part: The trustee shall — (1) collect and reduce to money property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of parties in interest; (2) be accountable for all property received ... (4) investigate the financial affairs of the debtor; ... (9) make a final report and file a final account of the administration of the estate with the court and with the United States trustee."   11 U.S.C. § 704(a)(1).

These statutory duties "serve as the basis for fiduciary duties."  *In re Kenneth C. Casey, Inc.*, 2022 WL 2198882, at *13–14 (Bankr. D. Colo. June 17, 2022); *see also In re Spence*, 497 B.R. 99, 108 (Bankr. D. Colo. 2013) ("Stemming

from the section 704 statutory duties, Chapter 7 trustees have additional common law fiduciary obligations to protect the interests of the estate and all estate beneficiaries, including the creditors who have claims against the estate.").   But "to prevail on a breach of fiduciary duty . . . claim against the Trustee, [Movant] must show that the Trustee owes a fiduciary duty to [him]." *Kenneth C. Casey, Inc.*, 2022 WL 2198882, at *13–14.   "A Chapter 7 trustee 'owes fiduciary duties only to the bankruptcy estate and its beneficiaries, and, as a result, only beneficiaries can bring claims for breach of those duties against the trustee.'" *Id.* (quoting *In re Christensen*, 2020 WL 2027232, at *4 (Bankr. D. Utah Mar. 27, 2020)).   To the extent that Movant asserts claims against the Trustee for harm done to his personal property that are akin to a tort claim, "a bankruptcy trustee is ordinarily entitled to quasi-judicial (or derivative) immunity from suit by third parties for actions taken in his official capacity."  *In re McKenzie*, 716 F.3d 404, 413 (6th Cir. 2013); *see also Matter of Ondova Ltd. Co.*, 914 F.3d 990, 993 (5th Cir. 2019) (aligning itself with its "numerous sister circuits" that "have held that trustees have qualified immunity for personal harms caused by actions taken within the scope of their official duties"); *see also Boullion v. McClanahan*, 639 F.2d 213, 214 (5th Cir. 1981) ("Since McClanahan, as an arm of the Court, sought and obtained court approval of his actions, he is entitled to derived immunity.");[4]

---

[4]   In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit Court of Appeals

*Matter of Roman Cath. Church of the Archdiocese of New Orleans v. Trahant*, 2026 WL 382396, at *8 (5th Cir. Feb. 11, 2026) ("[I]f Defendants acted at the order of the bankruptcy court and in accordance with that order, they are entitled to derivative judicial immunity.").   This immunity is available where the trustee takes an action on behalf of the bankruptcy estate that is within the scope of his authority.  *McKenzie*, 716 F.3d at 414.   In determining whether actions taken were within the trustee's authority, courts employ a "presumption that actions taken in a trustee's official capacity" are part of the trustee's duties "unless facts demonstrating otherwise" are "alleged at the outset."   *Id*. at 415.

Having considered the Motion and the Response, the Court concludes that, assuming Movant's allegations are true for the sake of argument, the Trustee is protected from liability by either absolute or qualified immunity.  *See In re J & S Props., LLC*, 545 B.R. 91, 100 (Bankr. W.D. Pa. 2015), *aff'd sub nom. Phoenician Mediterranean Villa, LLC v. Swope*, 554 B.R. 747 (W.D. Pa. 2016), *aff'd sub nom. In Re: J & S Props., LLC*, 872 F.3d 138 (3d Cir. 2017) (noting that a trustee who acts in accordance with a court order is entitled to absolute derived judicial immunity and a trustee who acts while performing his statutory duties is entitled to qualified judicial immunity).   Movant's complaint is with regard to the Trustee's decision to

---

adopted as binding precedent all the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

remove Movant's personal property from the Property and store it.   These actions were taken to further the sale of the Property and were authorized by the Sale Order and the Emergency Order, such that the actions cannot be a breach of any duty that may have been owed to Movant.   *See Christensen*, 2020 WL 2027232, at \*5 ("As long as a trustee gives notice of his intended actions to parties in interest and requests the court's imprimatur before taking those actions, he can breach neither his duty of care nor his duty of loyalty."); *see also In re Heinsohn*, 231 B.R. 48, 65 (Bankr. E.D. Tenn. 1999), *aff'd*, 247 B.R. 237 (E.D. Tenn. 2000).   Second, even if the decision to remove Movant's personal property and place it in storage was not specifically authorized by the Sale Order or the Emergency Order, the Trustee did not exceed the scope of his authority as the representative of the estate that owned the Property in which Movant's personal property remained, and his conduct met the standard of care (*i.e.*, a reasonable trustee would have done as the Trustee did).   *See In re Prosser*, 2016 WL 4821261, at \*3 (D.V.I. Sept. 8, 2016) (stating that, when the trustee is not protected by absolute immunity, the "analysis shifts to whether the trustee breached a fiduciary duty to a beneficiary of the estate") (citing *Mosser v. Darrow*, 341 U.S. 267, 274 (1951)); *see generally In re Alpern*, 246 B.R. 567, 577 (Bankr. N.D. Ill. 2000) ("Upon taking possession, the trustee owes a duty to the debtor to exercise ordinary care to protect the property. However, by storing exempt household property in this case for a time following the house sale and through

payment by the estate of the storage costs for a time, Fisher certainly exercised a high degree of care (far beyond "ordinary") as to that property.").

## Conclusion

For the reasons stated above,

IT IS ORDERED that the Motion is **DENIED**.

### END OF DOCUMENT

**Distribution List**

**Neil C Gordon**
Gordon & Pettie LLC
P. O. Box 671441
Marietta, GA 30006-0025

**John K. Rezac**
Ardis Law LLP
2300 Windy Ridge Pkwy.
Ste 1165N
Atlanta, GA 30339

**Gloria Jennifer Ezechukwu**
2418 Brookgate Way
Ellenwood, GA 30294

**Alan Hinderleider**
Office of the United States Trustee
362 Richard B Russell Federal Building
75 Ted Turner Drive, SW
Atlanta, GA 30303

**Prince I. Mathias**
2418 Brookgate Way
Ellenwood, GA 30294